*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-023

DECEMBER TERM, 2013

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Orleans Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Jason DeGreenia | } | DOCKET NO. 444-7-11 Oscr |

Trial Judge: Dennis R. Pearson

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his burglary and grand larceny convictions following a jury trial. He argues that the court erred in denying his motion to dismiss and his motion for a new trial. We affirm.

In ruling on defendant's motions, the trial court recounted the following facts. In the early morning hours of July 20, 2011, the owners of a sand and gravel pit discovered that someone had entered onto their property, removed numerous items from a storage trailer, and damaged a large, expensive gravel screening machine by cutting off insulated copper wiring. Police identified David Burns and Dean Perron as suspects. These men quickly confessed and implicated defendant as the third person involved. Police located many of the stolen items in a pickup truck registered to defendant's girlfriend. The truck was parked on defendant's property about seventy-five feet from defendant's home. Defendant was arrested and initially incarcerated.

In a series of motions, addressed by the court following defendant's convictions, defendant argued that the State withheld, lost, or otherwise failed to produce material evidence, which violated his due process and fair trial rights and prejudiced him in presenting an effective defense. In addressing these arguments, the court explained that, essentially, it must "perform a pragmatic balancing of three factors: (1) the degree of negligence or bad faith on the part of the government; (2) the importance of the evidence lost; and (3) other evidence of guilt adduced at trial," citing State v. Gibney, 2003 VT 26, ¶ 38, 175 Vt. 180 (quotation omitted). The court provided a detailed analysis with respect to each item of challenged evidence, which is set forth below in connection with defendant's arguments.

With respect to the challenged evidence in general, the court explained that case law has established that perhaps the most important factor in its analysis was the strength of the other evidence against defendant. Essentially, it was a "harmless error" analysis—that is, a trial need not be perfect, just fundamentally fair. In this case, the court found that Burns and Perron each testified and admitted their culpability for the same crimes that defendant was charged with. They each clearly implicated defendant as a full-fledged participant and co-conspirator in entering the gravel pit and storage trailer with intent to remove equipment and tools (burglary),

and stealing and taking away various items worth more than $900 (grand larceny).  The court found that Burns and Perron credibly testified that they were not offered or promised any inducements to testify, and indeed, each was already serving significant sentences for their own felony convictions.  Additionally, the court explained, many of the stolen items were found in a pickup truck registered to defendant's girlfriend, which was hidden away from the road on the property where defendant lived.  The court found this combination of direct and circumstantial evidence, if accepted by the jury, which it ultimately was, to be arguably insurmountable or nearly so.  Thus, the court's "pragmatic balancing" led it to conclude that the State's negligent loss of and failure to maintain and produce evidence, although arguably relevant and potentially helpful, did not fundamentally deprive defendant of a fair trial.  The court therefore denied defendant's motions to dismiss, for acquittal, for new trial and for further evidentiary hearing.  Following his sentencing, defendant appealed.

We begin with defendant's challenge to the State's late production of a written statement that defendant gave to police on July 22, 2011, the day after his arrest, along with a Miranda waiver form.  These items were provided to defendant shortly before trial.  In his written statement, defendant asserted that he had been with Burns and Perron during the evening of July 19 and the early morning hours of July 20, but he denied participating in the burglary and other alleged crimes.  Defendant provided the names of various people who he alleged would support his assertions.  This list included Perron, who had implicated defendant, pled guilty himself, and testified at defendant's trial as to defendant's participation and involvement in the crimes at issue.

The court determined that the police had placed defendant's statement and Miranda waiver "in the file," and "forgot" about them because they were not used to prosecute defendant.  It found the State's failure to disclose these materials clearly violated <u>Brady v. State of Maryland</u>, 373 U.S. 83 (1963), and V.R.Cr.P. 16(a)(2)(A), and it found the State's excuse for its late disclosure to be extremely feeble, at best.  While the failure to produce these documents was clearly negligent, the court found no evidence that it was done in bad faith or that there was any animus against defendant or intent to sabotage his possible defenses.  Rather, the prosecution appeared to have believed that they had an "open and shut case" with the confessions and testimony of Burns and Perron, and thus, preparation for possible trial and compliance with the rules got short shrift.  If anything, the court continued, this failure as well as others in the case, supported the defense's position at trial that this was a hurried, careless and sloppy investigation overall.

The court concluded, nonetheless, that the late disclosure had relatively little impact on defendant's reasonable ability to fashion a viable defense or to summon potentially supportive witnesses.  It explained that defendant's statement had not really been used adversely against him at trial.  Its existence had been referred to, accurately as to its content, and defendant denied all involvement in the burglary.  To the extent that this statement was "exculpatory"—only in the most literal sense because defendant simply denied committing the crimes; it did not provide any other probative details that would corroborate his flat denial of any involvement—defendant was not denied the use of it at trial because the essence of it came in through the State's own case.[1]  With respect to the list of names of other possible defense witnesses, the court asserted that surely defendant could have recreated the list himself during his trial preparation with his attorney.  There was no specific claim or proffer that defendant's memory was so unreliable that

---

[1]  The court prohibited the State from entering the statement itself into evidence as a sanction for its late production.

2

he could not later come up with the same names as potential "alibi" witnesses, and that he needed the prior statement as a memory aid or even as "past recollection recorded."

Defendant challenges this ruling on appeal. He maintains that the question of whether the State acted in bad faith was irrelevant, and that the court erred in concluding that the State's failure to timely disclose these documents had relatively little impact on his reasonable ability to fashion a viable defense and to summon potentially supportive witnesses. According to defendant, his statement was exculpatory and "fully corroborated" his denial and included a list of potential alibi witnesses. He argues that he reasonably assumed that his attorney was aware of this document. Defendant claims that he was prejudiced by the late production "because he and his attorney spent months preparing a defense without the benefit of all the available exculpatory evidence, based upon inexcusable neglect by the State."

To establish reversible error under V.R.Cr.P. 16, a defendant must show both a violation of the rule and resulting prejudice. See State v. Sird, 148 Vt. 35, 39 (1987). The court does not need to assess whether the State acted in good faith in conducting this analysis, but any finding on this point by the trial court is harmless error. We agree with the trial court that defendant failed to show prejudice here. As set forth above, the statement at issue was defendant's own statement and its substance came in during the State's case. It was exculpatory only in the most general sense and the jury was well aware that defendant denied involvement in these crimes. There was no showing, or even argument, that defendant could not recreate his list of alibi witnesses, mindful, of course, that one of the named alibi witnesses testified against defendant. Defendant was not prejudiced by the late production of these documents.

With one exception, the remaining items at issue were lost by law enforcement. As set forth above, with respect to these items, the court must "perform a pragmatic balancing of three factors: (1) the degree of negligence or bad faith on the part of the government; (2) the importance of the evidence lost; and (3) other evidence of guilt adduced at trial." Gibney, 2003 VT 26, ¶ 38. As previously noted, the court found the evidence of defendant's guilt to be extremely strong here.

We begin with police photographs of numerous shoe prints and tire tracks in and around the gravel pit taken on the morning of July 20. The trial court found that these photographs went "into the file" and were forgotten. They were then lost by law enforcement through carelessness and inattention, not bad faith or intentional disruption of the trial process. Defendant appeared to argue that he could have used this evidence to show that the tire tracks from his pickup truck, and/or footprints from his shoes or boots, did not match the tracks and prints in the photographs. The court found the utility of this possible approach to be slim because it would be entirely speculative and would require defendant to overcome the natural suspicion that goes with attempting to "prove a negative." Defendant's contention could only be minimally persuasive, because defendant at some later point could have arguably changed the tires on his truck or gotten rid of any shoes or boots worn on the date in question. The absence of a positive match would not necessarily establish that defendant was never at the gravel pit. To be sure, the court continued, defendant would only need to establish reasonable doubt, but the court found it unlikely that a showing concerning footprints or tire prints, even if it could have been made, would do so, especially in light of the direct trial testimony from the two other individuals implicating defendant.

Defendant argues on appeal that the court erred in its analysis. According to defendant, the State was very negligent in losing these materials, and there was a reasonable possibility that

this evidence would have been favorable. In particular, he states that he could have used the photos to show that he did not create any of these footprints and therefore, he was not present at the scene.

These arguments fail for the reasons identified by the trial court. The court acknowledged that the State was negligent in losing these photographs, but it found the lost evidence of minimal importance. As the court explained, defendant could easily have gotten rid of the shoes he wore that evening. The absence of a match would not prove that defendant was not at the scene. We agree with the court's assessment of the significance of this evidence, particularly when weighed against the other evidence of guilt adduced at trial.

Defendant next argued to the trial court that a police officer had taken photos of shoe prints that he made in soft ground just outside the Sheriff's Department on July 21 and that the officer declined to keep his shoes as evidence. The officer testified at trial that he did not take any such photos, and the court found the officer credible on this point. Again, the court found that the probative value and importance of this evidence would be entirely speculative. There was no corroborating evidence that the shoes defendant wore on July 21 were in fact the same ones worn the night before, or that the lack of a positive match would tend to disprove his presence at the gravel pit.

Defendant contends on appeal that the officer should have taken photographs of the shoe prints, and that the failure to collect and preserve such evidence must be deemed gross negligence. Defendant does not show that he raised this argument to the trial court, and he claims no plain error. We thus we do not address this argument.. See State v. Carpenter, 2013 VT 28, ¶ 5 (where argument not raised in trial court, Supreme Court review is for plain error only). See The final piece of evidence concerns photographs taken during the burglary by an automatic "game camera" set up at the pit. The court found that the memory chip was taken out of the camera and retained by police, apparently after the owners and/or officers had viewed some of the pictures. It was unclear exactly which officer took possession of the memory chip and brought it back "for the file." Some, but apparently not all, of the pictures on the chip were copied onto a disc and given to the State's Attorney. Prints of some of those pictures were produced at trial and the owners testified that, at least to their recollection, there were other better pictures. None of the photos could be described as visibly depicting or conclusively identifying any specific person, however, including Burns and Perron, who admitted to having been there. There was nothing to suggest that any of the photos would have identified specific tire track imprints or shoe prints sufficient to support testimony as to whether they matched exemplars offered by the defense.

The State provided defendant with some photographs on the first day of trial, and a cursory review suggested that they were effectively useless. The memory chip could not be located, again due to negligence and inattention. The court found the relevance and materiality of the missing pictures to be minimal. The absence of defendant in any such picture was of little utility in establishing reasonable doubt because the State could easily explain away his absence, at least without any "alibi" witness who could squarely place defendant elsewhere at the time— which potential witnesses defendant always had it in his power to identify and produce at trial, even without a prior written statement identifying them.

Defendant argues that he did not need to show that this evidence was exculpatory, only that it was potentially exculpatory. He maintains that the game camera photos would have provided evidence from a "third eyewitness" whose credibility was not an issue. These

4

arguments are without merit. The court applied the appropriate standard in considering this evidence. Defendant must show "a reasonable probability that the lost evidence would be exculpatory," and if so, the court must engage in the three-part balancing test cited above. The court here found the lost evidence of minimal importance, particularly when weighed against the other evidence of defendant's guilt. It did not err in its assessment.

Having found no prejudice resulting from the lost evidence or late production of evidence, we reject defendant's argument that "the cumulative and combined effect" of the State's failure to disclose evidence denied him due process and a fair trial. See State v. Brooks, 2013 VT 27, ¶ 33 (reaching same conclusion).

Defendant next argues that the court should have held an evidentiary hearing before denying his motion for a new trial based on newly discovered evidence. He cites as "newly discovered evidence" phone records showing calls between the Sheriff's Office and defendant's home. Defendant's girlfriend lived with defendant and his mother. Defendant maintains that these records would have supported claims by his girlfriend she had discussed defendant's alibi with a police officer. The girlfriend claimed that she had spoken to the officer for fifteen to twenty minutes, but the longest call reflected was four and a half minutes.

The record shows that this issue arose pretrial. In a pretrial motion to dismiss, defendant argued that several days after his arrest, his girlfriend had given a police officer a statement over the phone. Defendant asserted that his girlfriend said that she spoke to the officer for fifteen to twenty minutes about defendant's whereabouts on the evening in question, including providing a list of corroborating witnesses. **PC 69.** The State opposed defendant's motion to dismiss, and provided an affidavit from the relevant police officer stating that he had not spoken to defendant's girlfriend as claimed in defendant's motion. Defendant did not ask the officer about this alleged conversation at trial; he did not call his girlfriend to testify; he did not present any alibi testimony.

In his post-verdict motion to dismiss, defendant alleged that his girlfriend would testify at an evidentiary hearing that, shortly after the alleged crimes were committed, the officer called her at defendant's residence and asked her questions concerning the investigation. He later submitted telephone records showing three calls from the Sheriff's Department to the home on July 22, 2011, July 27, 2011, and August 17, 2011. The calls lasted, respectively, four and a half minutes, one minute and forty seconds, and one minute and thirty-eight seconds. Defendant argued that this "newly discovered evidence" warranted a new trial because it would show that the officer's denial of having made the calls was part of "an ongoing police pattern to stimey, confound, vex, and obfuscate the defense in this matter;" it would have supported defendant's statement to the police; and it would have been valuable impeachment material to use at trial against the officer. The court denied the motion, noting that nothing had prevented defendant from calling his girlfriend as a witness at trial to dispute the officer's account.

We find no error in the court's denial of this request without a hearing. See State v. Miller, 151 Vt. 337, 339 (1989) (explaining that court has discretion in ruling on motion for new trial); State v. Unwin, 142 Vt. 562, 565 (1983) (recognizing that trial court need not hold hearing on motion that is frivolous or totally lacking in merit). As we have explained, "[m]otions for new trial on the ground of newly discovered evidence are not favored by the courts and are viewed with great caution; courts are properly reluctant to grant a second trial once a defendant has had his or her day in court and been fairly tried." State v. Bruno, 2012 VT 79, ¶ 9, 192 Vt. 515 (quotation omitted). To be entitled to relief, defendant needed to show all of the following:

"(1) the new evidence would probably change the result on retrial; (2) the evidence was discovered only subsequent to trial; (3) the evidence could not have been discovered earlier through the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching." Id.

The proffered evidence here plainly failed to meet this standard. For all the reasons set forth above, it would not probably change the result on retrial. Whether the officer spoke with defendant's girlfriend about alibis was not a disputed, material issue in this trial. At most, the evidence is merely impeaching. The court did not err in denying defendant's request.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice